# United States District Court
## For The Western District of North Carolina
## Charlotte Division

William Keith Patterson,

        Plaintiff(s),

                     JUDGMENT IN A CIVIL CASE

vs.

                     3:01cv278-2/3:96cr154-29

USA ,

        Defendant(s).

DECISION BY COURT. This action having come before the Court by motion and a decision having been rendered;

IT IS ORDERED AND ADJUDGED that Judgment is hereby entered in accordance with the Court's 5/12/05 Order.

FRANK G. JOHNS, CLERK

5/12/05

BY: _Betsy Wallace_

Betsy Wallace, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:01CV278-02-MU
(3:96CR154-29-MU)

WILLIAM KEITH PATTERSON,       )
        Petitioner,            )
                               )
        v.                     )        O R D E R
                               )
UNITED STATES OF AMERICA,      )
        Respondent.            )
_____)

**THIS MATTER** is before this Court upon petitioner's "Motion
To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255,
filed May 21, 2001; and on the "United States' Motion to Dis-
miss," filed October 9, 2001.   For the reasons stated herein,
and for the further reasons stated in the government's Motion to
Dismiss, the government's Motion to Dismiss will be granted; and
the petitioner's Motion to Vacate will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on
October 9, 1996, a multi-count Bill of Indictment was filed,
naming the petitioner and 39 other individuals as defendants.
Such Indictment charged, inter alia, the petitioner with con-
spiring to possess with intent to distribute, and distribute, an
unspecified quantity of Dilaudid pills, in violation of 21 U.S.C.
§§841(a)(1) and 846.

Thereafter, in July 1998, defense counsel filed several pre-

trial Motions for the petitioner, including a Motion to Suppress the anticipated testimony of certain government witnesses, and a Motion to Dismiss the Indictment. Such Motion to Suppress was based upon a newly announced change in the statutory and case law, and argued that the petitioner's co-conspirators were potentially incredible due to their Plea Agreements with the government. The petitioner's Motion to Dismiss argued that the grand jury testimony of an agent was incorrect, and created an irregularity that required dismissal of the case as against the petitioner.

However, upon this Court's review of those matters, it was determined that both Motions had to be denied. More particularly, the Court determined that the Grand Jury had not been misled into indicting the petitioner; and, in light of the fact that the opinion[1] upon which the petitioner was relying to challenge his co-conspirators' potential testimony was pending on en banc review, it would not be appropriate to grant the Motion to Suppress. Moreover, the Court concluded that the government's actions of obtaining testimony from cooperating co-defendants was taken in good faith on the basis of long-held, previously unquestioned practices; therefore, the Court refused to invalidate

---

[1] In United States v. Singleton, 165 F.3d 1297 (en banc), cert. denied, 527 U.S. 1024 (1999), the Tenth Circuit Court of Appeals ultimately reversed its initial conclusion that the 1997 version of 18 U.S.C. §201(c)(2)--the provision which prohibited the giving anything of value in exchange for testimony--was applicable in the plea agreement context of criminal prosecutions.

those practices on the basis of the Tenth Circuit's decision.
However, the Court gave counsel permission to read 18 U.S.C.
201(c)(1) into evidence and argue that the government was
violating the law by securing testimony from witnesses with whom
it had made favorable Plea Agreements.

After more than 30 of the petitioner's co-defendants entered
their guilty pleas, the petitioner and the remaining two co-
defendants proceeded to trial on this matter. During the course
of the trial, the government called a total of six witnesses
against the petitioner, and presented evidence by a video tape.
In the aggregate, such evidence tended to establish that from
about 1992 up to 1997, the petitioner participated in a large,
loosely operated conspiracy to possess and distribute Dilaudid in
the Gaston County area. The evidence further tended to establish
that although the petitioner personally consumed some of the
Dilaudid which he bought from his co-defendants, he also sold
Dilaudid to other users at one or more "pill houses" which were
operated by a conspiracy member.

For his part, defense counsel vigorously cross-examined the
government's witnesses, thereby attempting to paint his own
picture of the petitioner as no more than a sympathetic Dilaudid
user. Nevertheless, at the conclusion of the trial, the jury
found the defendant (and his co-conspirators) guilty of the
conspiracy charge.

On July 28, 1998, the petitioner filed a "Motion For Judgment Of Acquittal Notwithstanding The Verdict, Or In The Alternative, For New Trial." Such Motion was premised, in part, on the argument that the verdict was not supported by substantial evidence in that there was no independent evidence to corroborate the testimony of the testifying co-conspirators. However, on July 31, 1998, the Court denied the Motion, finding that the petitioner's guilty verdict was supported by "ample" evidence.

Next, on February 23, 1999, the petitioner filed a "Motion," challenging the U.S. Sentencing Guidelines' treatment of Dilaudid for sentencing purposes. By that Motion, the petitioner contended that the Guidelines were "inherently unreasonable" in that they punish more harshly trafficking in Dilaudid--a drug which has medicinal purposes--than they punish trafficking in Heroin, a drug with no approved medical use.

On the following day, the Court held the petitioner's Sentencing Hearing, during which it took up his "Motion" along with his several objections to the Pre-Sentence Report. Indeed, at sentencing, the petitioner successfully challenged several matters, including the number of pills which could be attributed to him. The result of the petitioner's successful efforts was that the Court found that he was not a Career Offender; and that his Offense Level should be reduced from 32 to 26. However, the Court rejected the petitioner's request for a reduction for

4

minimal or minor participation, it denied his Motion for a reduction based upon the Sentencing Guidelines' treatment of Dilaudid as compared to Heroin, and it noted that even despite the removal of the Career Offender designation, the petitioner still had enough prior convictions to place him in Criminal History Category VI. When asked by the Court whether he personally wished to make any statement, the petitioner did not protest his innocence or otherwise object to the Court's findings, but instead indicated that he couldn't think of anything.

Ultimately, the Court sentenced the petitioner to a term of 120 months imprisonment. Thereafter, the petitioner gave a timely Notice of Appeal of his case to the Fourth Circuit Court of Appeals.

On appeal, the petitioner resumed his arguments that the Indictment was obtained through inaccurate testimony before the Grand Jury; that the testimony of several co-conspirators should have been suppressed as improperly obtained in violation of 18 U.S.C. §201(c)(2); that in the absence of this improper testimony, the evidence would not have been sufficient to convict him; that the Sentencing Guidelines' treatment of Dilaudid offenses violated his right to due process; and that this Court had erred in rejecting his request for a role reduction under §3B1.2(b) of the Guidelines. United States v. Patterson, No. 99-4192, slip op. at 2 (4th Cir. Jan. 12, 2000).

However, the Court of Appeals determined that the Court had not erred in any of its decisions. In particular, the appellate Court found that the petitioner had failed to prove that grand jurors had been substantially influenced by the supposed inaccuracies in the agent's testimony; that the Fourth Circuit, at least in an unpublished decision, had recently rejected the petitioner's §201(c)(2) argument; that the petitioner had failed to establish that the Guidelines' treatment of Dilaudid was constitutionally flawed; and that the evidence of the petitioner's several-year involvement in the conspiracy negated his claim of minor or minimal participation. Id. at 2-4. Accordingly, the petitioner's conviction and sentence were affirmed. Thereafter, the U.S. Supreme Court denied the petitioner's Petition for a Writ of Certiorari.

Consequently, on May 21, 2000, the petitioner returned to this Court on the instant Motion to Vacate. Here, the petitioner argues that he was subjected to ineffective assistance of counsel during the trial, sentencing and appellate stages of his criminal case; and that he was denied his right to due process by virtue of his sentence having been calculated on the basis of erroneous, incomplete and unreliable information.[2]

---

[2]In addition to the foregoing claims, the petitioner also initially claimed that the statute under which he was prosecuted and convicted was unconstitutional; and that the Indictment was "jurisdictionally defective." However, these last two claims were dismissed with prejudice, by the Court. See documents #| 5, 6 and 12).

On October 9, 2001, the "United States' Response To Petition
And Motion To Dismiss" was filed. In that document, the govern-
ment contends that the petitioner is not entitled to relief on
his claims for numerous reasons, most notably, because he has
failed to demonstrate prejudice in connection with his claims
against counsel and because, to the extent that the petitioner is
challenging the quality of the evidence which was used to convict
and sentence him, such claim amounts to an attack on the credi-
bility of government witnesses which is not subject to review in
this proceeding.

On November 11, 2001, the petitioner filed a "Reply" to the
government's Motion to Dismiss. By his Reply, the petitioner
asserts that he was prejudiced in a number of ways, including the
fact that he was unable to "provide the jury with the evidence"
which counsel failed to discover or offer, he was unable to
challenge the Court's lack of findings concerning the pill count,
and he was unable to raise meritorious claims on appeal.
Thereafter, on December 27, 2002, the petitioner filed a
Supplemental Memorandum, an Affidavit and other documentary
materials in an effort to further support his claims.

Despite his strong contentions to the contrary, for the
reasons stated herein, the petitioner's claims must be dismissed.

## II.  **ANALYSIS**

### 1.  **The petitioner's claim that his due process rights were violated in connection with the**

### Court's calculation of his sentence must be summarily rejected.

At the outset of its analysis, the Court notes that the petitioner is claiming that his due process rights were violated by virtue of the Court's having used erroneous information to calculate his sentence. However, the Court finds that such challenge is barred due to the petitioner's procedural default.

Indeed, in United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000), the Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Here, the record reflects that the petitioner failed to appeal this particular issue--and, although he did challenge counsel's effectiveness on appeal in three discrete areas--he did not allege ineffectiveness for not having raised this precise

claim on appeal.[3]  Accordingly, this Court lacks the authority

even to review the instant claim because it was procedurally

defaulted.

## 2. **The petitioner's claim that counsel was ineffective on appeal is feckless**.

Turning now to the petitioner's claims that counsel was

ineffective and, more precisely, the claim that counsel was

ineffective at the appellate stage of this case, the Court finds

such claim also is subject to summary dismissal.

To be sure, with respect to allegations of ineffective

assistance of counsel, a petitioner must show that counsel's

performance was constitutionally deficient to the extent it fell

below an objective standard of reasonableness, and that he was

prejudiced thereby.  Strickland v. Washington, 466 U.S. 668, 687-

91 (1984).  In making this determination, there is a strong

presumption that counsel's conduct was within the wide range of

reasonable professional assistance. Id. at 689; see also Fields

v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert.

denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425,

---

[3] That is, the petitioner has alleged that counsel was ineffective on appeal, in general, for having failed to raise "significant obvious issues." The petitioner further claimed that counsel was ineffective, in particular, for having failed "to raise a constitutional challenge to the [ ]statute his client was indicted on," to "raise a jurisdictional challenge to the [ ]indictment," and to "raise a due process challenge for lack of an essential element that created a structural error in the [ ]indictment." Notwithstanding the obvious lack of merit underlying these claims which the petitioner preferred, there is no mention of counsel's decision not to challenge the information which was used to calculate the petitioner's sentence. Thus, this claim clearly is procedurally barred.

1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

As has already been noted, the petitioner claims that counsel was ineffective on appeal for failing to challenge the Indictment, to raise a "jurisdictional challenge" to the Indictment, and to raise a due process claim for lack of an essential element--presumably the pill quantity--in the Indictment. However, to the extent that the petitioner is suggesting that counsel should have raised claims under Apprendi v. New Jersey,

530 U.S. 466 (2000), such matters clearly would have been rejected at the time that the petitioner's case was presented on appeal.

Clearly, Apprendi was not decided until 2000--which was four years after the petitioner was Indicted. The law prior to Apprendi did not require indictments to specify the quantity of drugs with which the defendant allegedly dealt. See, e.g., united States v. Dorlouis, 107 F.3d 248, 252 (4th Cir. 1997) (noting that drug quantity was a sentencing factor which could be proven by a preponderance of the evidence); and United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996) (same). Thus, inasmuch as there has never been a requirement that defense attorneys predict future decisions which are entirely contrary to current precedent, counsel could not possibly have been deficient for not raising this challenge.

### 3. The petitioner also has failed to state a claim on the basis of his allegation that counsel was ineffective at sentencing.

As to this claim, the petitioner alleges that counsel was ineffective at sentencing for his failure: (1) to object to the Court's supposed failure to make factual findings for the pill amount in accordance with Federal Rule of Criminal Procedure 32(c)(1); (2) to object to the Court's use of unreliable information; (3) to "make a competent objection" to the Court's use of the "per-pill-weight" to calculate his base offense level; (4) to

prepare for sentencing by providing the Court with medical records to challenge the "per-pill-weight" which was used; (5) to interview potential witnesses and make "an independent investigation" of the facts relating to the utility of the petitioner's medical records; (6) to object to the Court's calculation of his criminal history score; and (7) to object to the Court's inclusion of "unconstitutionally obtained convictions" in its calculation of his criminal history score.

Despite the litany of matters about which the petitioner complains, this claim need not long detain the Court. That is, as the record clearly reflects, shortly after receiving a copy of the petitioner's Pre-Sentence Report, counsel for the petitioner filed multiple objections to that Report. One such objection challenged the petitioner's proposed designation as a Career Offender on the ground that one of his qualifying convictions had been set aside by the State court which had imposed it. In addition, counsel asked the Court to exclude from its calculation certain of the petitioner's numerous convictions which were sustained prior to his involvement in the instant conspiracy.

Counsel also challenged the amount of Dilaudid pills which were being attributed to the petitioner. For that argument, counsel relied upon information which he elicited during his cross-examination in order to demonstrate that the PSR's figures were too high. Similarly, as was previously noted, counsel filed

a "Motion" asserting that the Sentencing Guidelines' treatment of Dilaudid was irrational and unreasonable in light of Dilaudid's medicinal values as compared with Heroin, a drug which has no medicinal usages. According to counsel, the Guidelines failed to articulate a reasoned explanation for the harsh treatment of Dilaudid, therefore, the Court should have sentenced the petitioner as if he had trafficked in an equivalent amount of Heroin.

As a result of defense counsel's persistent efforts, he convinced the Court to disregard certain aspects of the testimony against the petitioner and to reduce the pill amount from 14,300 to below 2,000; he convinced the Court to forego the Career Offender designation; and he obtained a sentence which was at the lowest point of the applicable Guidelines range. More precisely, counsel caused the petitioner's Total Offense Level to be reduced from 32 to 26, resulting in a corresponding sentencing range reduction from 210-262 months to 120-150 months. Thus, based upon counsel's efforts, the petitioner avoided the possibility of having to serve as many as 12 more years than the sentence which was imposed.

Last on this point regarding the law's calculation of the per-pill weight, the petitioner himself concedes that such a challenge was a losing battle inasmuch as he has attacked counsel for having raised this "significantly weaker" argument on appeal (see the attachment to petitioner's Motion to Vacate, at claim

13

III).  Thus, no amount of medical records which petitioner claims counsel should have obtained could have turned this issue into a successful claim for relief.  Ultimately, on this record the petitioner plainly cannot demonstrate any prejudice in connection with counsel's performance at sentencing.

### 4.  The petitioner cannot prevail on his allegations that counsel was ineffective at trial.

As to this last allegation, the petitioner contends that counsel was ineffective in numerous way during the trial of his case.  Upon the Court's review, it was determined that the petitioner's numerous complaints could be grouped into three allegations:  that counsel was ineffective for having failed to fully investigate this case and prepare for trial, for having failed to file certain pre-trial motions, and for having failed to file certain motions during the trial.  As with his other allegations against counsel, however, these also are entirely without merit.

### 1.  Counsel's decision regarding pre-trial motions.

Turning now to the petitioner's allegation that counsel was ineffective for having failed to file certain pre-trial motions-- one objecting to the government's supposed lack of federal jurisdiction to entertain the charge against him and the other seeking a severance--such claim is patently frivolous.

Regarding the question of jurisdiction, the petitioner has

14

failed to articulate exactly what he means by this allegation. As best the Court can determine, this is yet another attempt by the petitioner to raise an Apprendi-based challenge. However, as was previously explained by this Court, such claim clearly could not have prevailed at the time that the petitioner was prosecuted because neither Apprendi nor its progenitor Jones v. United States, 526 U.S. 227 (1999) had even been decided at that point. Moreover, as this Court already explained, the petitioner received a sentence which was well below the statutory maximum 20-year term; thus, he cannot prevail on this claim in any event.

Similarly, the petitioner cannot possibly demonstrate any prejudice based upon counsel's decision not to seek a severance of his case from that of his co-defendants. On the contrary, it is well settled under Federal Rule of Criminal Procedure 8(b) that "defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Consequently, when defendants are properly joined and there are no special circumstances to justify severance, as was the case here, defense attorneys will not be able to overcome the corollary principle that "individuals indicted together should be tried together." United States v. Brugman, 655 F.2d 540, 542 (4ᵗʰ Cir. 1981).

Based upon the foregoing, then, the petitioner cannot

prevail on his allegation of pre-trial error.

## 2. **Counsel's trial strategy**.

The petitioner also alleges that counsel was ineffective for having failed to take certain actions at trial. In particular, the petitioner claims counsel was ineffective for failing to assist him in "advocating his defense" and for failing to object to the admission of a videotape whose probative value was out-weighed by its prejudicial effect. Unfortunately for the petitioner, as with certain other allegations, he did not bother to expound upon these two assertions. Thus, the Court finds that the petitioner has failed to state a claim for relief here.

On the other hand, the petitioner went on at length about counsel's failure to request a lesser-included-offense instruction at trial. According to the petitioner, there was testimony from a witness reflecting that he (petitioner) used Dilaudid, and that during a several month period, the witness had sold the petitioner quantities of Dilaudid which were consistent with use, not distribution, of that drug. Therefore, notwithstanding the fact that the overwhelming majority of the other testimony showed that the petitioner had obtained vast quantities of Dilaudid, lived and/or worked in various "pill houses," and had been observed selling pills to others, the petitioner claims that counsel was ineffective for not having pursued this course.

Critically, however, the petitioner was not charged with

16

possession with intent to distribute Dilaudid, but rather conspiracy to possess with intent to distribute Dilaudid. The Fourth Circuit has indicated that-albeit in an unpublished opinion which relied upon a published Tenth Circuit opinion-- simple possession is not a lesser-included offense of conspiracy to possess with intent to distribute a controlled substance. See United States v. Horn, 946 F.2d 738 (10th Cir. 1991) (quoted in United States v. Puckett, Nos. 92-5572 and 5573, slip op. at 2 (4th Cir. July 21, 1993). See also United States v. Colon, 268 F.3d 367, 377 (6th Cir. 2001) (holding that simple possession of cocaine is not a lesser included offense of conspiracy to possess cocaine with intent to distribute it); and United States v. Brown, 604 F.2d 557 (8th Cir. 1979) (noting that no simple possession of cocaine instruction could be given as a lesser included offense of conspiracy to possess with intent to distribute since the conspiracy offense did not require proof of possession for a conviction).

Accordingly, the petitioner cannot demonstrate either a deficiency or prejudice on the basis of counsel's trial tactics.

### 3. **Counsel's pre-trial investigative efforts**.

As to this last contention, the petitioner asserts that counsel was deficient in his pre-trial preparation based upon his failure to conduct a thorough investigation, to interview and secure witnesses, and to prepare a proper defense.

A review of the petitioner's Supporting Memorandum reveals his assertion that from the time of his first interview with counsel until the first day of his trial, he "consistently maintained... that he was nothing more than a Dilaudid addict that stole merchandise from retail stores to support his addiction." It also reveals his concession that he lived in one of the "pill houses" in question, though he claims he "never controlled any of the money, never possessed any Dilaudid pills for the purposes of distribution, and that he never conspired to possess any Dilaudid pills with the intent to distribute them."

Ironically, however, in a subsequent discussion in the petitioner's Memorandum, he concedes that counsel's "entire defense at trial rested on discrediting the Government's witnesses, and establishing that he [petitioner] was nothing more than a drug addict who purchased Dilaudid for his addiction." Consequently, the petitioner's claim that counsel failed to fully investigate and prepare an adequate defense is most curious.

Concerning his allegation that counsel failed to interview and secure witnesses, in his Memorandum the petitioner listed six persons whom he believes counsel should have interviewed and presented at trial. However, the petitioner conceded that four of those persons "had an apparent reason to be biased in the petitioner's favor . . . ." The petitioner also indicated that several of those witnesses were the roommates with whom he

resided at the "pill house" in Bessemer City. Thus, even if counsel was deficient for not having interviewed these people, this Court would be hard pressed to conclude that the petitioner was prejudiced by such deficiency.

As to the two remaining witnesses, the petitioner asserts that they would have been able to establish that during the period when he was alleged to have been buying drugs from one of the government's witnesses, he was employed as a long-distance truck driver, he was earning a good income, and he often was out of town on assignments. The petitioner further asserts that the other witness could have established that the drugs which he had been abusing were not even Dilaudid pills.

Obviously, however, the fact that the petitioner had legitimate employment which provided him with a source of income undercuts his own claim that he was merely a Dilaudid addict who stole merchandise in order to support that habit and, in any case, and the fact that such employment caused him to travel out of town would not have entirely precluded a conclusion that the petitioner also was a drug dealer. Therefore, the failure to interview and call this particular witness does give rise to a finding of prejudice.

Similarly, even if the other witness had been called to establish that tests which the petitioner underwent during a course of drug treatment showed the presence of a codeine-based

drug--not the active ingredient from Dilaudid, that testimony also would not have negated the jury's ability to convict the petitioner as a conspirator based upon the government's evidence. In fact, it is likely that counsel would not have called this witness in any case because her testimony seemingly would have contradicted the petitioner's defense that he, in fact, was merely a Dilaudid user. Therefore, the petitioner has failed to show any prejudice in connection with this allegation.

### III. **CONCLUSION**

This Court has conducted a careful review of the record of this matter and determined that the petitioner is not entitled to relief on any of his claims. Therefore, the government's Motion to Dismiss should be granted.

### IV. **ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's Motion to Dismiss is **GRANTED**; and

2. That the petitioner's' Motion to Vacate is **DISMISSED**.

**SO ORDERED.**

**Signed: May 12, 2005**

Graham C. Mullen
Chief United States District Judge